Good morning, Your Honors. James P. Stoneman, appearing for Appellant Kevin Murray. We're confronted here today with the interaction between the administrative procedure under the whistleblower protection program and the California state common law cause of action for violation of public policy. This arises in the context of Mr. Murray, who engaged in protected activity by making complaints to his employer, Alaska Airlines, to the FAA, regarding serious aircraft safety issues similar to those which resulted in the crash of Flight 261. The question here, whether Mr. Murray should be essentially compelled to participate in the litigation of an administrative procedure available under the whistleblower protection program. Well, he invoked it, didn't he? He did file a complaint. He filed and he triggered the investigation. That is correct. And then when he didn't like the results, he withdrew, apparently. He withdrew before the result. Is that right? How did he withdraw? He just abandoned it. There is no procedure under the WPP for formally dismissing or withdrawing. Well, there is a procedure for withdrawing. You can notify the agency that you wish to withdraw, and then they have the discretion, if it's reached a certain point, to either agree to the withdrawal or not. I don't find any procedure in Section 42121 for withdrawing or abandoning. Section 1979.111, withdrawal of complaints, objections, and findings. At any time prior to the filing of objections to the findings or preliminary order, a complainant may withdraw his or her complaint under the Act by filing a written withdrawal with the assistant secretary. The assistant secretary will then determine whether the withdrawal will be approved. Were you aware of that provision? No, Your Honor. Did you represent Mr. Murray in these proceedings? No, Your Honor. I represent him only on the appeal. Did anyone represent him, do you know, with the investigation? He had counsel who filed the civil complaint that is in the excerpt of record. I don't know whether that attorney formally represented him before the Secretary of Labor. Okay. However. In any event. In any event, Your Honors, I think it's important to recognize that there are fundamental differences in the nature of the proceedings, irrespective of the question whether he could have withdrawn in a more proper way. The WPP, first of all, and perhaps most significantly, is in its very nature a summary proceeding. It provides relatively short time frames within which to accomplish its ends. For example, the Secretary of Labor has 60 days within which to investigate and make findings, and only 120 days within which to issue an order. However, the primary remedies available under the WPP proceeding are equitable. They are primarily to the power to issue some type of corrective orders to the airline in question and reinstatement. There is also a provision for damages. However, these would not be the types of damage available in a violation of public policy claim under California law, which would include emotional distress and punitive damages. The differences are significant because in the court action, there's a much more extended period of time available. Under California's fast-track rules, even under fast-track rules, you have about 14 months within which to conduct discovery and prepare for trial. What's the significance of that other than the fact that there's a trial and there was no trial in this case? The significance, Your Honor, is that in a summary proceeding, a proceeding that is by nature somewhat expedited and shortened, we feel that the authorities we cited in our brief come into play and, therefore, indicating that a collateral estoppel, it is less significant when the first proceeding is one which is expedited in nature. And we cited cases such as the Vela v. Hudgens case, a California Supreme Court case, in which the same identical issue appears in subsequent court actions. This is in the context of unlawful detainer, but the defense of fraud arguably was litigated or the opportunity to litigate was present in an unlawful detainer proceeding. But because of the expedited nature of that proceeding and the fact that there are some jurisdictional limits there as well, the Supreme Court found that, you know, this can be relitigated later, even if you accept the proposition that the opportunity to litigate was there in the first instance. Am I correct, assuming, if I'm correct, remembering the record, the issue in your case is causation relative to his termination? That is the issue that was determined. Yes. That's right. And that would be the same issue in your civil or your other suit if you would file it. That would be one of the issues. Yes, but it would be a crucial issue. Yes. And so why, under California law, why wasn't the determination of that causation issue in this administrative hearing not binding? As I understand the law, you could have appealed the decision, you could have got a court review of that. What's the problem with that process under California law as you see it relative to the preclusion? From my perspective, the problem is, and akin to the unlawful detainer analogy of the Vela case, the WPP process, by its very nature, is an expedited process. Does it come up with a factual finding and decision that should be recognized under law? Regardless of the expedited process, I understand. But what prevents that from coming up with a conclusion, a decision that's appropriate for issue preclusion? The expedited nature of it, I think, degrades to some extent the extent of ability to cross-examine, to do discovery, and to take the proper time to ferret out the this is a complex issue of causation. And I would point out that in this case Excuse me. Is there no ability for you to get a hearing in that process? I believe there is an ability to get a hearing. And he didn't ask for the hearing? He did not. He did not appeal a decision that was made in the summary proceedings? That's correct, Your Honor. Okay. The problem I have with your reliance on Vela, which is an unlawful detainer case, is that what they say is as a consequence of the foregoing principles, a judgment in unlawful detainer usually has very limited race judicata effect. It doesn't say it has no race judicata effect. And the reason is the scope of the legal issues that can be tried in an unlawful detainer action are quite limited. So to that extent, Vela, as a summary proceeding focused on really right of immediate possession, doesn't extend beyond and have a preclusive effect that goes beyond that narrow issue. But it doesn't say it has no race judicata effect. And in this proceeding, essentially, it's an alternative way to resolve promptly with the DOL's assistance in the investigation and the like the very claim that your client was wanting to make. And it did have a hearing process. That's correct. The investigation was done by DOL. I understand they didn't talk to your client, so there may have been some issues there. But to say that it's the equivalent of an unlawful detainer action seems a stretch. California does seem to follow the rule, at least for default judgments and judicial proceedings, that if you default, unlike a majority rule, you can be bound by the outcome on the merits. Do you disagree with that proposition? No, Your Honor. So the question we have to resolve is whether California would decide that the nature of this proceeding is so much like an unlawful detainer that it shouldn't have a preclusive effect, notwithstanding the issue that's relevant here. Causation is clearly one that could have been litigated with a hearing. I would generally agree with Your Honor's proposition. I'd like to save what I believe is about one minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is David Reese, and I represent Alaska Airlines in this case. Help me, counsel, before we get too deep in this. It sounds like we've fleshed out some things from our prior discussion. It seems as though the process might have resulted, that was started by the appellant, might have resulted in full-blown hearings, but instead it was sort of summary terminated because of the way it was filed, what counsel did or didn't do representing the appellant, and ended up in a decision. Now, the fact that appellant was not precluded from doing other things, requesting a hearing, going on appeal, does that degrade the nature of the decision that was made under the process that was carried forward? No, I don't think so, Your Honor. The key issue on the collateral estoppel, the common law collateral estoppel idea, is that you need to have an opportunity to litigate. And I think the case law in California is very clear that if you do not actually litigate because of your own choice, that doesn't mean that you didn't have an opportunity. Here he was very ---- He wouldn't have had to do this at all. I'm sorry? He wouldn't have had to file this complaint at all. He would not have. You're right, Your Honor. So he filed an administrative complaint, and then when he got an investigation that he didn't like, he knew that you could make that investigative report a final report. Correct. Well, it would become a final report if he didn't ---- If he didn't do anything. Right. And he said to himself, well, you know, I made a mistake. I shouldn't have asked for an investigative report. So I'm not going to ask for anything further. I'll take the investigative report as final. Why do you know of any cases in which California courts have applied collateral estoppel under similar circumstances where in an administrative proceeding the Petitioner didn't object to an agency saying the preliminary investigative report becomes final and use that as a collateral estoppel? Well, Your Honor, there's two other related sort of theories here that the district court did not rely on that I think are related and also justify the same result, and it's not the common law collateral estoppel, but the idea of collateral attack on the administrative agency's decision. And I think there are California cases that we cite in the brief on that issue where the California courts have said that if you fail to timely seek review of the administrative action, that you cannot subsequently challenge that in some collateral proceeding. The Schwartz and Drubber case, which is on page 24 of our brief, as well as two Ninth Circuit cases, Gilbert, which is on page 25, and Turr, which is on page 25. And so in this case, I think just under the terms of the statute. But aren't those cases in which you're trying to get? I'm sorry, Your Honor? Aren't those cases in which you're trying to get the administrative determination set aside? Right. The case the Schwartz and Drubber case was a case in which there was a decision made as to somebody's discharge, and it was determined that the discharge was upheld by the administrative agency. The plaintiff then went and filed a lawsuit seeking to challenge the reasons for his termination. And the court essentially said that the reasons for the termination were already determined in the administrative agency, and you could not, by collateral attack, go and file a separate lawsuit seeking to establish something that had been just established against you in the administrative proceeding. There was a procedure to get that administrative decision reviewed that you had to follow. Well, in this process, as noted at the beginning, there is a recognition that the petitioner could abandon the process. Now, the secretary has to sign off on it. But if what he did was unilaterally abandon without taking the formal step of writing a letter, now, had the secretary, had he, in fact, done that process and the secretary refused to let him withdraw, would a California court, do you think, under those It's too bad. Once he elects, he's stuck with it unless I decide to let him out. That's a tough question. I don't know. I would think that perhaps there would be a chance of that because he voluntarily submitted his claim to this procedure, at which point there are very detailed federal scheme in the statute. And if the secretary, for whatever reasons, denies him the ability to withdraw it, I would think that the California court should respect that. And even in that situation, he would still have the right to request a hearing. I think an important point here, and there's some things in the briefs that are not at all supported in the record. One, this idea that he tried to withdraw or abandon. Nowhere does that appear in the record. And as you pointed out, Your Honor, there is a very specific way in which you need to withdraw. And nowhere in the record, and I have not seen outside the record or anywhere any type of written or any communication. This is the first in the briefs in this case, or perhaps even I don't know if it's in the brief, in the argument here today, is the first time that I've actually heard that he's tried to withdraw from the process. I don't think we really know whether he did. We don't even know whether he was represented. He was represented, Your Honor. During the entire process? He was, by an attorney named Rand Stephens, the same one who represented him in the district court. Rand Stephens is the one who filed on his behalf or at least helped him. And as to the investigative report, were there any communications from Rand Stephens? He's the one that filed the district court. I think the next communication after the administrative decision was he filed the district court action. After the preliminary investigative report came down, was there any communication with the agency from Rand Stephens? I don't know, Your Honor. I don't know. Well, let's stop right there for a minute, because that started my thinking also. First of all, this is the whistleblower statute, Federal Act, right? Right. This is not an invitation to a high school dance. And so when someone files under the statute, it's now empowering the federal government and all of the system to do a very serious act and set up a definite procedure. Now, it seems to me you don't abandon after you've brought somebody into a process and made these charges that are subject to certain federal consequences. So from what I can tell, there's no abandonment, because there is a procedure for abandonment. There wasn't. There was a formal procedure where the process was put into motion by submitting substantive materials. And those substantive materials were acted upon. There was also a failure to follow up under legitimate relief for appeals or a hearing. And so does that have any significance under the California law about the seriousness of the decision that was made under those circumstances? Oh, I think so, Your Honor. There's no question of fairness. And as Judge Fischer pointed out, in California, and this is pointed out in the People v. Sims case, default judgments in civil actions, provided there was notice to the party, have a full collateral estoppel effect. That brings us back to where I asked you your question. Are you aware of any case in which the California courts applied this doctrine to an administrative proceeding, which was, after all, an investigative report, and that then, without a hearing, the investigative report came, became final by default? And at that point, when I said, are you aware of any cases in which California courts have applied this doctrine when there was no administrative hearing, you said, well, let's switch to the subject of collateral attack. Well, Your Honor, there's the Reimer case that we cite in our brief on page 14, where in that situation there was a workers' comp issue that was resolved by oral argument in the parties in a hearing that was given collateral estoppel effect with the ---- They participated in a hearing. In an oral ---- counsel did, an oral argument. There's also the People v. Sims case in which the government in that situation did not choose to present its case at a hearing. But there was a hearing. And they didn't present their issue. That's why I asked you whether there was any case without a hearing. I'm not aware that there is, Your Honor. The other issue that I guess I wanted to ---- Well, let's stop right there. The cases that do describe hearing do, and I'll have to go back and re-review what I read, but do they rely on the fact that there was a hearing or an opportunity for it? And I think that's the real distinction, is the opportunity. And here there was clearly an opportunity. How do we know there was a hearing? Whatever anybody said, if there hadn't been a hearing, we still would have. It's pure dicta. In? You don't know. It's pure dicta if somebody said we had a hearing. But if we'd gotten a case without a hearing, we might have reached the same result. Well, in the default issue, obviously no hearing. No. That's in court. Right. That's why I asked about administrative hearings. The other thing I think that's important to point out is just the powerful nature of this whole Federal scheme. Counsel was talking about how truncated this is and how there's not a great opportunity to fully litigate this, but the remedies are powerful. Based on this investigation alone, if they had found for him, he would have been reinstated with back pay and compensatory damages, and those orders would not have been stayed if we had appealed that decision. And so in a very short period of time, several months, he could have been reinstated with back pay and compensatory damages, and there would have been no stay of that order while we challenged it. To go through to that point and then say, I got a bad ruling, so now I'm going to start over and abandon it, I think is inappropriate. Was this truly a default? I mean, he instigated this, and what did he put into the system? A default is somebody files something, you never show up. Right. But this wasn't a true default, was it? No. And the decision of the Department of Labor says, based on witness testimony and documents from both parties, they made these very specific factual findings. He actually participated. He didn't have a hearing, but he actively participated. It wasn't a default. Right. And I had a stack of documents this big that he gave involving all sorts of air safety issues that were sent to my office when this thing was first filed. Thank you, counsel. We're a minute over. Thank you. Sorry I took you. I believe I only have about a minute. But to the extent that I could clarify a couple of issues that the Court has raised, Mr. Stevens did file the complaint on Mr. Murray's behalf. That's at ER 58. The decision itself was sent directly to Mr. Murray, according to the record, and that is at ER 62. One additional issue that I'd like to raise, that the WPP has four sections discussing burdens of proof. And to the extent that, even though I suppose it could be argued that it would be actually in my client's favor, to the extent that they are using a standard of proof that is using the phrase clear and convincing evidence with respect to the evidence of the employer, I think this is an additional factor that indicates the problem of applying lateralism. I don't understand. Who has to have clear and convincing evidence? The airline. To do what? To show that they didn't terminate him because of his complaints, essentially. So they have a higher burden than they would in a civil suit? That's correct. So how does that help you? Only in the sense that they're using a different standard of proof for any purpose in an administrative proceeding other than the standard burden of proof that applies in the California State court, which is preponderance of the evidence for everything except punitive damages. I don't think that's a very helpful point for you, but it's a point. I point it out to the Court because I am. Do you have any other arguments that will help the employer? I think the fact that there are shifting burdens of proof that are enumerated in the statute and which. Well, if you have shifting burdens where there's a lower burden for the employer than in the civil suit, that might be of some help to your client. Otherwise, I think the employer's time has been used to it. Resubmit, Your Honor, unless you have any more questions. Thank you, Counsel.  Case is argued will be submitted. Thank you, Mr. Chairman. Thank you.
judges: Reinhardt, Brunetti, Fisher